UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>v.<br><br>JOSEPH D. HORNOF,<br><br>         Defendant. | Case No. 4:21-cr-00166-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Joseph Hornof's Motion to Suppress. Dkt. 25. The Court held an evidentiary hearing on October 12, 2022, and took the matter under advisement.

For the reasons set forth below, the Motion to Suppress is DENIED.

## II. BACKGROUND

On May 5, 2021, members of the Internet Crimes Against Children taskforce (ICAC) executed a search warrant at 555 North Broadway Street, Blackfoot, Idaho, where Defendant Joseph Hornof lives with his parents. Agents seized several electronic items and brought Hornof to the Bingham County Sheriff's office for questioning. ICAC detective Jared Mendenhall conducted most of the interview.

Agents brought Hornof into the interview room and removed his handcuffs. Detective Mendenhall asked Hornof if he was on any medications, to which he responded that he had two prescriptions. When asked if there were any medications that could not wait, Hornof said no, and that he would be fine. Detective Mendendall then explained to Hornoff that, though he was not under arrest, he was being detained and was not free to leave. Detective Mendenhall informed Hornof of his *Miranda* rights and then questioned him. During this questioning, Hornof confessed.

### III. ANALYSIS

a. **Adequacy of *Miranda* Warning**

In his Motion to Suppress, Hornof argues that his confession should be suppressed because Mendenhall subjected him to a custodial interrogation without providing adequate *Miranda* warnings.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), the Supreme Court held the Fifth Amendment's prohibition against compelled self-incrimination requires that a criminal defendant must be advised: (1) he has the right to remain silent; (2) anything he says can be used against him in a court of law; (3) he has the right to the presence of an attorney; and (4) if he cannot afford an attorney one will be appointed for him prior to questioning if he so chooses. With respect to the right to an attorney, a criminal defendant must be warned he has the right to consult with counsel both before and during questioning. *People of Territory of Guam v.*

*Snaer*, 758 F.2d 1341, 1342–43 (9th Cir. 1985); *Duckworth v. Eagan*, 492 U.S. 195, 204 (1989).

Though the Supreme Court does not require a "verbatim recital of the words of the *Miranda* opinion," the warning must reasonably convey to a suspect his rights as *Miranda* requires. *California v. Prysock*, 453 U.S. 355, 359–60 (1981). When a suspect is subjected to a custodial interrogation without first being advised of his rights, "*Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985).

Here, Mendenhall did not read Mendenhall's *Miranda* rights verbatim, but paraphrased them from memory:

> **Mendenhall**: I have to explain to you your rights, so you are aware of them. You have the right to remain silent. Anything you say can be used against you in court. You have a right to an attorney to be present *during any and all questioning*. If you can't afford one, we will get you one . . . So, you have the right to an attorney and if at any time during questioning, if you decide to answer questions for us, you decide you need an attorney, just let us know. We will make sure you get one."

Exhibit 1, 7:25:29-7:26:17 (emphasis added).

The parties now dispute whether Mendenhall's *Miranda* warnings were sufficient to advise Hornof of his Fifth Amendment rights. Hornof argues that his Miranda warnings were inadequate because, though Mendenhall advised him that he had a right to an attorney, he left ambiguous whether that right attached prior to questioning. The Government argues that, though Mendenhall did not say "prior to being questioned," the language he used was clear enough to inform Hornof that his right to an attorney was effective immediately.

MEMORANDUM DECISION AND ORDER - 3

In determining whether a police officer adequately conveyed each of the requisite *Miranda* warnings, "reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to the suspect his rights as required by *Miranda*." *Powell*, 559 U.S. at 60 (cleaned up). However, it is "an absolute prerequisite to interrogation" that an individual held for questioning "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda*, 384 U.S. at 471. Though Mendenhall did not say the magic word "prior," he did advise Hornof that he had a right to an attorney "during any and all questioning." Though a meaningful syntactical distinction could be drawn between "prior to" and "during any and all," *Powell* notes that these technical matters of textual interpretation are not the proper analysis here. 559 U.S. at 60. What matters is whether, under the circumstances, the language was sufficient to make Hornof understand that he had a right to an attorney not only once questioning began, but in the moments before the questions started. *See id*. The Court finds that Mendenhall's language was sufficient for that purpose. Mendenhall's *Miranda* warning was effective and did not violate Hornof's rights.

    b. **Whether the *Miranda* Waiver was knowing and intelligent**.

Hornof argues that because of his non-traumatic brain injury, his prescribed medications, and his second COVID-19 shot, he was unable to comprehend the seriousness of waiving his *Miranda* rights and providing the police with a highly incriminating statement.

MEMORANDUM DECISION AND ORDER - 4

Courts consider the totality of the circumstances in determining whether a waiver of *Miranda* rights was knowing and intelligent. *United States v. Bernard S.,* 795 F.2d 749, 751 (9th Cir.1986). Relevant circumstances include (1) whether the defendant signed a written waiver, *see id* at 752–753; *United States v. Bautista–Avila,* 6 F.3d 1360, 1365 (9th Cir.1993); (2) whether the defendant was advised of his rights in his native tongue, *see id.; United States v. Gonzales,* 749 F.2d 1329, 1336 (9th Cir.1984); (3) whether the defendant appeared to understand his rights, *see id.;* (4) whether a defendant had the assistance of a translator, *see Bernard S.,* 795 F.2d at 752–753; (5) whether the defendant's rights were individually and repeatedly explained to him, *see Derrick,* 924 F.2d at 824; and (6) whether the defendant had prior experience with the criminal justice system, *see Glover,* 596 F.2d at 865. *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998). To be admissible, the confession must not have been caused by coercion, intimidation, or deception. *Moran v. Burbine,* 475 U.S. 412, 421 (1986); *United States v. Padilla*, No. CR 09-658TUCDCBCRP, 2010 WL 1719367, at *5 (D. Ariz. Apr. 28, 2010).

Here, Hornof did not sign a written waiver, but he was advised of his rights in his native tongue. Hornof did not need the assistance of a translator because he speaks fluent English. Agents explained his rights individually and carefully, but not repeatedly. And Hornof, who has been convicted before for sexual abuse of a child under 16, has had prior experience with the criminal justice system. The remaining issue, and the focus of the parties' dispute, is whether Hornof appeared to understand his rights.

Hornof argues that because of a non-traumatic brain injury he sustained while working as a prison guard in Montana, he was taking a variety of psychotropic medications

MEMORANDUM DECISION AND ORDER - 5

that made him sleepy and affected his ability to understand. In addition, Hornof had just received his second Covid-19 vaccination the night before, which he argues made him even drowsier. The Government concedes that Hornof was drowsy during the interview but argues that drowsiness alone would not render Hornof unable to waive his *Miranda* rights.

In spite of his drowsiness, Hornof appeared to understand his rights. Before waiving them, he had an intelligent conversation with Mendenhall about his criminal culpability. Whatever effect his medications might have had on his understanding, the point is moot because he did not take any medication prior to questioning. By his own admission, Hornof was not given a chance to take his medications before he was taken to the station.[1] For the medications to have caused drowsiness, they must have been ingested first, and they were not here.

On balance, the Court finds that the totality of the circumstances indicate that Hornof knowingly and intelligently waived his rights. Further, there is no evidence that Hornof's confession was the result of coercion, intimidation, or deception. The Magistrate Judge found that even with impairments from his brain injury, Hornof was of average intelligence and not especially susceptible to coercion, intimidation, or deception. Regardless, there was no evidence of coercion, intimidation, or deception by law enforcement. Though the defendant did sustain a non-traumatic brain injury, there is nothing in the record that shows he did not have the ability to understand his Miranda rights

---

[1] Mendenhall testified at the hearing, and the Court verified from the footage, that Hornof was asked if he needed to take any medications. He replied that he would be fine.

knowingly and intelligently, as given. For the above reasons, the Court will DENY Hornof's Motion to Suppress.

## IV. CONCLUSION

Because Hornof's *Miranda* warnings were constitutionally adequate, and because he knowingly and intelligently waived those rights, the Court will DENY his Motion to Suppress.

## V. ORDER

IT IS ORDERED that:

1. Defendant's Motion to Suppress (Dkt. 25) is DENIED.

DATED: November 4, 2022

David C. Nye
Chief U.S. District Court Judge